UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:16-CV-62318-RNS

CYNTHIA DENISE JACOBS,

            Plaintiff,

vs.

OCWEN LOAN SERVICING, LLC,

            Defendant.

_____/

## PLAINTIFF'S MEMORADUM IN OPPOSITION TO MOTION TO STAY

Plaintiff, Cynthia Jacobs ("Jacobs"), hereby responds in opposition to Defendant, Ocwen Loan Servicing, LLC's ("Ocwen") *Motion to Stay Proceedings Pending Ruling by the D.C. Circuit Court of Appeals* (the "Motion to Stay") [D.E. 17] as follows:

### Introduction

There are two means to establishing liability under the TCPA in this matter.  The first requires a showing that Ocwen used an automatic telephone dialing system ("ATDS").  The second can be met by proof that Ocwen used artificial or prerecorded voice in connection with the call.  Jacobs has alleged in her Complaint facts to support a finding that Ocwen violated the TCPA both ways. There is nothing in the Complaint to suggest that Jacobs' TCPA claims are entirely dependent on a finding that Ocwen used an ATDS.  As it stands, Jacobs has produced records from her cellular service provider, T-Mobile, which show numerous calls from Ocwen's telephone number, which calls resulted in voicemail messages the duration of which are consistent with Jacobs' allegation that Ocwen employed prerecorded messages in connection with its calling campaigns.  Jacobs deserves an opportunity to prove that Ocwen violated the TCPA via use of prerecorded voicemail messages.

Even if Jacobs' Complaint were wholly dependent on a showing that Ocwen used an ATDS, Ocwen fails to contend that its dialing equipment would not meet the strict statutory definition of an ATDS in the event that FCC's 2015 Order were overturned.  In fact, Ocwen fails to describe the capabilities of its dialing equipment in any way.  Instead, Ocwen mischaracterizes Jacobs' allegations as contending that its equipment constitutes a predictive dialer[1].  This reading is strained where Jacobs merely alleges in generalized terms that Ocwen's calls were placed without human intervention.  Nowhere in Jacobs' Complaint does she allege the use of a predictive dialer.  More discovery must be completed before any conclusions can be drawn about precisely what capabilities Ocwen's equipment actually possesses.  In the absence of any such determination, a stay based on an assumption is premature.

Finally, Ocwen's blanket assertion that a ruling excusing predictive auto-dialers from the TCPA's protections—an interpretation that the Federal Communication Commission ("FCC") has consistently declined to adopt since 2003—would "entirely eliminate or sharply limit the legal basis for Jacobs' TCPA claims" is tantamount to a constructive refusal to enforce a currently valid FCC interpretation, an action this Court is expressly prohibited from taking. Predictive dialers have for many years been found to constitute ATDS by the FCC, as well as multiple appellate courts.  Consequently, the issue of whether predictive dialers constitute ATDS is not properly before the D.C. Circuit Court, because that issue was addressed in past rulings which the FCC did not reconsider or reopen in its 2015 Order.  See *In the Matter of Rules &Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015)

---

[1] The FCC defines "predictive dialer" as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Red. 14014, 2003 WL 21517853, at *4 n.31 (July3, 2003) ("2003 FCC Ruling").

(the "2015 Order").

## Discussion

**I.      Jacobs' case is not wholly dependent on the definition of an ATDS.**

      **a.      The use of prerecorded voice messages offers an independent path to recovery.**

Though the decision in *ACA International*[2] has the potential to clarify the scope of what constitutes an ATDS, it will not be dispositive of this action.  Regardless of the outcome of *ACA International*, the question of whether Ocwen violated the TCPA by using artificial or prerecorded messages in connection with its calling campaign—irrespective of whether an ATDS was used—falls outside the scope of the pending appeal to the D.C. Circuit.  This is so because Jacobs' alleges that she received calls using an artificial or prerecorded voice, as well as calls made by an ATDS.   (Compl. ¶¶ 17, 21, 45 and 51).   Each of these allegations are independently actionable.[3]  See *Vaccaro v. CVS Pharmacy, Inc.*, No. 13–CV–174–IEG RBB, 2013 WL 3776927, at *1 n.2 (S.D. Cal. July 16, 2013); *Vance v. Bureau of Collection Recovery LLC*, No. 10–cv–06324, 2011 WL 881550, at *3 (N.D. Ill. Mar. 11, 2011).

Because Jacobs' may recover damages for calls made using "an artificial or prerecorded voice", independent of any determination of Ocwen's employment of an ATDS to make these calls, the decision in *ACA international* will likely have only a limited impact on the issues before the Court, and thus will not substantially simplify the issues presented.  Consequently, a stay is unwarranted.  See *Sliwa v. Bright House Networks, LLC*, 2016 WL 3901378 at * 4 (M.D. Fla. July 19, 2016) ("stay will not affect Plaintiff's contention that Bright House called him using

---

[2] *ACA Int'l v. Federal Communications Commission,* Case No. 15-1211 (D.C. Cir. Nov. 25, 2015).
[3] The statute prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system **or** an artificial or prerecorded voice" 47 U.S.C. § 227(b)(1)(A) (emphasis added).

a prerecorded or automated voice, which is an independent basis for stating a claim under the TCPA."); *Mendez v. Optio Solutions, LLC*, 2017 WL 914587 at * 3 (S.D. Cal. March 8, 2017) (stay not warranted where plaintiff's TCPA claims are not limited to defendant's use of an ATDS, but also concerns defendant's use of an artificial or prerecorded voice system); *Gosneigh v. Nationstar Mortgage*, LLC, 2017 WL 435818 at * 2 (M.D Fla. Feb. 1, 2017) (ACA International will not affect plaintiff's contention that defendant called her using a prerecorded or automated voice, which is an independent basis for stating a claim under the TCPA); see also *Rodriguez v. DFS Servs., LLC*, No. 8:15–cv–2601–T–30TBM, 2016 WL 369052, at *3 (M.D. Fla. Feb. 1, 2016) (stating ACA International did not warrant a stay because it would "have no effect on the viability of Rodriguez's lawsuit as pled in her complaint").

      **b.**      **Further discovery is warranted to determine the capabilities of Ocwen's dialing equipment.**

Notwithstanding how the D.C. Circuit ultimately rules in *ACA International* regarding the outer limits of what an ATDS, Ocwen fails to describe the characteristics of its dialing system such that a determination can be made as to the applicability of any possible decision reached in that case. Jacobs has merely alleged that Ocwen's method of contacting her is indicative of an ability to dial numbers without any human intervention in the calling process. (Compl. ¶ 47). From this generalized allegation Ocwen draws the rather strained conclusion that Jacobs is referring to Ocwen's use of a predictive dialer.

Putting the mischaracterization aside, Ocwen has declined categorize its dialing equipment as a predictive dialer. Indeed, Ocwen fails to commit to any facts regarding how its dialing equipment operates. Although Jacobs has alleged that Ocwen's calls bore tell-tale signs of automation, discovery has yet to reveal precisely what capabilities Ocwen's dialing equipment

has. (Compl. ¶ 45).

Under these circumstances, is would be entirely premature to assume that Ocwen's telephony equipment does not meet the statutory definition of an ATDS.   Jacobs should therefore be allowed to complete her pending discovery efforts (Ocwen's corporate representative deposition is set for March 14, 2017) in order to settle the open question of what manner of autodialing technology Ocwen employed in calling Jacobs.  If it is determined through discovery that Ocwen's systems are configured in a manner that does not invoke the future capacity question at issue in *ACA International*, the D.C. Circuit's decision may well be inapplicable.

Pending resolution of this question, a stay is unwarranted.  See *Reichman v. Poshmark, Inc*., 2017 WL 436505, at *5 (S.D. Cal. Jan. 3, 2017) ("It would be unreasonable to require Plaintiff, without the benefit of discovery, to describe the technical details of Defendant's alleged ATDS. Therefore, whether Defendant actually used an ATDS, i.e., equipment with the capacity to dial numbers without human intervention, is an issue that should be decided after discovery has been conducted."); *Leachman v. Discover Financial Services, LLC*, 15-cv-62120-PAS, ECF No. 19 (S.D. Fla. Jan. 13, 2016) (denying motion to stay, in part, based on the disputed relevance of the FCC'S July 2015 Order); *Kafatos v. Uber Technologies, Inc*., No. 15-cv-03727-JST, ECF No. 40 (N.D. Cal. Jan. 8, 2016) (finding, that although the D.C. Circuit decision "could be beneficial to this action by clarifying certain questions of law, the parties still require discovery on a number of factual issues regardless of the outcome of those cases."); *Lathrop v. Uber Technologies, Inc*., (N.D. Cal. Jan. 8, 2016) ("Even if the D.C. Circuit were to modify or vacate the 2015 FCC Order, factual disputes such as whether an ATDS was used…will remain here."); *Richardson v. Verde Energy USA, Inc*., 2016 WL 4478839, at *3 (E.D. Pa. Aug. 25, 2016) ("This

action is not automatically over even if the ACA [International] outcome is favorable to the defendant.").

### c.      The question of predictive dialers as ATDS has long-been answered.

To the extent that Ocwen acknowledges use of a predictive dialer, the question of whether a predictive dialer constitutes an ATDS is not before the court in *ACA International*. Contrary to Ocwen's depiction, the 2015 Order does not purport to define what constitutes an autodialer, much less to alter the statutory definition.  In fact, the 2015 Order specifically declined to "address the exact contours of the 'autodialer' definition" or "to determine comprehensively each type of equipment that falls within that definition."  2015 Order ¶ 17. Instead, with respect to auto-dialers, the FCC narrowly addressed a discrete issue: whether the autodialer restrictions must be limited to devices that have the "present capacity" to autodial telephone numbers, even though the text of the statute is not so limited.

As early as 2003, the FCC ruled that predictive dialers fell within the definition of "automatic telephone dialing equipment."  *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14093 (2003) (the "2003 Order").  In most cases of predictive dialing, the calling party "programs the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call." *Id*. at 14091.

While the original sin which lead to the enactment of the TCPA—telemarketing—was previously driven by dialing equipment that created and dialed phone numbers arbitrarily, the teleservices industry "progressed to the point where using lists of numbers [w]as far more cost effective." *Id*. at 14092.  Even though callers now program the numbers to be called into the equipment using a set list, rather than the equipment randomly or sequentially generating the

numbers, the FCC explained that "[t]he basic function of such equipment ... has not changed—the capacity to dial numbers without human intervention." *Id*.

The FCC determined that "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result." *Id*. at 14092.   In particular, the Congressional goal of alleviating the problem of machines dialing thousands of cellphones in a short period of time would be undermined.  As the FCC noted, the congressional history of 47 U.S.C. § 227(a)(1) shows that Congress envisioned that the language in the TCPA might not be able to account for future changes in technology, and that it might need to interpret the TCPA in a way that keeps pace with changes in technologies.  *Id.* Consequently, the FCC concluded that Congress chose the language it did to ensure that the prohibition on autodialed calls not be circumvented." *Id*. at 14092–93.

Thus, as early as 2003, the FCC found that the use of the dialing equipment that can generate and store numbers was peripheral to the core problem that the TCPA was enacted to cure, machine driven dialing of cellphones and other sensitive numbers that "threaten public safety and inappropriately shift marketing costs from sellers to consumers."  *Id*.   As a result, predicative dialers have fallen within the TCPA's scope since 2003, even if such dialers operate strictly through the use of preprogramed lists instead of number generators.

In 2008, the FCC addressed a challenge to its predictive dialer ruling. The petitioner claimed "that a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (2008) (the "2008 Order").  The 2008 Order reaffirms the FCC's prior

ruling.   In so doing, the FCC explained that "to find that calls to ... wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls." *Id*.   The FCC again noted that "the basic function of such dialing equipment, had not changed--the capacity to dial numbers without human intervention." *Id*.

In 2015, the FCC released its most recent order addressing the TCPA's definition of "automated telephone dialing equipment." In its 2015 Order, the FCC endorsed a broad interpretation of the term "capacity."   The teleservices and debt collection industries have argued that equipment is not an autodialer unless it has the "'current capacity' or 'present ability' to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made." *Id*. at 7972 (emphasis added).   The FCC rejected this "present ability" approach. Instead, it reaffirmed its "previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." *Id*. at 7971–72 (emphasis added).

Based on its 2003 and 2008 Orders, the FCC ruled that it had ***already*** "implicitly rejected any 'present use' or 'current capacity' test.  In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id*. at 7974. Thus, "equipment can possess the requisite 'capacity' to satisfy the statutory definition of 'autodialer' even if, for example, it requires the addition of software to actually perform the functions described in the definition." *Id*. at 7975. The FCC stressed that Congress "intended a broad definition of autodialer." *Id*. at 7974. Thus, the FCC rejected the argument that "the term

'capacity' implies present ability rather than future possibility." *Id*. at 7976.

Without "address[ing] the exact contours of the 'autodialer' definition," the FCC noted that it has "long held that the basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time' " *Id*. at 7974–75. The FCC explained, "[h]ow the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." *Id*. Accordingly, equipment may be an autodialer despite the fact that it does not have the capacity to dial numbers without human intervention, but this lack of capacity may defeat a TCPA claim "based on how the equipment functions and depends on human intervention." *Id*. at 7975.

Given this history, the D.C. Circuit court lacks jurisdiction to consider the FCC's treatment of predictive dialers, because that issue was resolved in past orders that were not timely appealed and were not reconsidered in the 2015 Order under review in *ACA International*. See *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 277, 278-81 (1987) (an agency's denial of a request for reconsideration that did not invoke new evidence or changed circumstances is "unreviewable").

### d. Courts have long found that Predictive dialers are ATDS.

Well before the FCC's 2015 Order, the law on what constitutes an automatic telephone dialing system was established in this District.[4] In fact, the ATDS analysis by the Court in

---

[4] See e.g. *Lardner v. Diversified Consultants Inc*., 17 F. Supp. 3d 1215, 1220 (S.D. Fla. 2014); *Legg v. Voice Media Group, Inc*., 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014) (noting that "[t]he FCC determined that predictive dialers fall within the definition of an ATDS" and citing In re Rules & Regulations Implementing the TCPA, 18 FCC Rcd. 14014 (FCC 2003); *Brown v. Account Control Technology, Inc*., 2015 WL 11181947 at * 3 (S.D. Fla. Jan. 16, 2015) (telephone dialer that operates on "autopilot," using "software or a machine of some nature" to dial numbers listed in a file is an automatic telephone dialing system as contemplated by the TCPA); *Strauss v. CBE Group, Inc*., 2016 WL 1273913 at *3 (S.D. Fla. March 28, 2016) (predictive dialer is clearly an ATDS within the meaning of the TCPA); *Hicks v. Client Services, Inc*., 2008 WL 5479111, at *10 (S.D. Fla. Dec. 11, 2008) (device that calls a set of

*Lardner v. Diversified Consultants Inc.,* 17 F. Supp. 3d 1215 (S.D. Fla. 2014) has been widely cited.  In *Lardner*, this Court determined that a predictive dialer was an ATDS under the TCPA, utilizing the FCC's Rulings of 2003 and 2008.  The Lardner court ruled as follows:

> **Having found that Congress did not directly address this issue, the Court finds that the FCC's interpretation regarding what constitutes an ATDS under the TCPA is reasonable. In its 2003 order, the FCC explained that the TCPA was enacted to alleviate automated calls to certain categories of telephone numbers, including numbers assigned to wireless services and calls where the consumer is charged. 18 F.C.C.R. 14014 ¶ 133. To distinguish between objectionable calls made using automatic dialing software that pulls from a preprogrammed set of telephone numbers and objectionable calls made using software that arbitrarily formulates telephone numbers would not serve the purpose of the statute. *Id*.  The FCC's interpretation is "based on a permissible construction of the statute" and must therefore be given deference. Chevron, 467 U.S. at 843, 104 S.Ct. 2778.**

The current petition in *ACA International* only seeks review of the 2015 Order, not the previous orders that hundreds of cases have used to determine whether a specific piece of equipment is an ATDS.  Moreover, notwithstanding the pending appeal, because "Congress has entrusted the implementation and interpretation of the TCPA to the FCC," the FCC's prior rulings presently has the full force of law.  *Jamison v. First Credit Services, Inc*., 290 F.R.D. 92, 97 (N.D. Ill. 2013) (stating in a TCPA case that the court is "bound by the FCC's orders, which are final and controlling").  Because appellate courts have exclusive jurisdiction over claims to enjoin, suspend, or invalidate a final order of the FCC, district courts may not refuse to enforce the FCC's interpretation.  *Mais v. Gulf Coast Collection Bureau, Inc*., 768 F.3d 1110, 1119 (11th Cir. 2014). By staying this case, the Court would be effectively suspending enforcement of

---

numbers without human intervention, likely falls under the FCC definition of "automatic telephone dialing systems"); *Rivas v. Receivables Performance Mgmt*., 2009 U.S. Dist. LEXIS 129378, at *12 (S.D. Fla. Sept. 1, 2009) (evidence that computer device dialed Plaintiff's number without human intervention sufficient to create material issue of fact regarding whether Defendant called him using an automatic telephone dialing system); *Ortega v. Collectors Training Inst. of Ill*., 2011 WL 241948, at *8 (S.D. Fla. Jan. 24, 2011) (denying summary judgment because there was evidence that defendants used an "auto dialer system" and because Plaintiff heard a "robot voice" on the message).

the FCC's interpretation of an auto-dialer in its prior orders.

As articulated by the court in *Swope v. Credit Management*, LP, 2013 WL 607830, at *4, (E.D. Mis. 2013), "[t]he interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC that have been consistently applied by the courts, rather than postponing this case for an indefinite amount of time because the possibility that the FCC may decide to reconsider its past position."   As the court in *Swope* further noted, any change in the manner in which FCC would apply the TCPA would only be "applied prospectively", and it would, therefore, not affect the outcome of this case, as Jacobs seeks damages for past conduct.  See *Swope*, 2013 WL 607830, at *4 (citing Am. Tel. & Tel. Co. v. FCC, 978 F.2d 727, 732 (D.C.Cir.1992) (holding that rulemaking operates only prospectively)).

Moreover, Jacobs' claims do not rely solely on the 2015 FCC Order, but are rather underpinned by years of jurisprudence.  Ocwen has not attempted to explain how these courts' previous interpretations on what qualifies as an ATDS would not apply to its dialing system.[5]

---

[5] See *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.2012) (Debt collector's predictive dialers constituted "automatic telephone dialing system," as required to support class claim alleging that debt collector violated TCPA by calling consumers' cellular telephone numbers without consent; predictive dialers had capacity to store or produce telephone numbers to be called, using random or sequential number generator and to dial such numbers); *Brown v. Credit Mgmt., L.P*., 2015 WL 5480004 (N.D. Ga. Sept. 16, 2015) (predictive dialer); *Gragg v. Orange Cab Co., Inc*., 2014 WL 494862, at *2 (W.D. Wash. 2014) (stating that the definition of an ATDS includes equipment that is "a predictive dialer with the capacity to dial telephone numbers from a list without human intervention" and citing In the Matter of Rules & Regulations Implementing the TCPA of 1991, 23 F.C.C.R. 559, 566 ¶ 14 (FCC 2008)); *King v. Time Warner Cable*, 2015 WL 4103689, at *4 (S.D. N.Y. July 7, 2015); *Morse v. Allied Interstate, L.L.C*., 65 F. Supp. 3d 407 (M.D. Pa. 2014) (predictive dialer meets definition); *Moore v. DISH Network*, 57 F. Supp. 3d 639 (N.D. W. Va. 2014) (predictive dialer is autodialer if it has capacity to be upgraded by software to store or generate numbers randomly or sequentially; human involvement in inputting the number is irrelevant); *Sterk v. Path, Inc*., 46 F. Supp. 3d 813, 816–821 (N.D. Ill. 2014); *Davis v. Diversified Consultants, Inc*., 36 F. Supp. 3d 217 (D. Mass. 2014) (LiveVox system is covered); *Hickey v. Voxernet, L.L.C*., 887 F. Supp. 2d 1125, 1129–1130 (W.D. Wash. 2012) (predictive dialer is autodialer); *Bronson & Migliaccio, LLP*, Case 0:09–cv–61164– UU, May 27, 2010, D.E. 59 at 5 ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service, which calls debtors without any human intervention[.]"); *Vance v. Bureau of Collection Recovery, L.L.C*., 2011 WL 881550, at *6–7 (N.D. Ill. Mar. 11, 2011) ("[T]he FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); *Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999, 1010–1011 (N.D. Ill. 2010); *Gregory v. Diversified Consultants, Inc.*,

**III.**     **Ocwen has not shown the extraordinary circumstances to support a stay.**

A stay is considered an extraordinary remedy, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of the Court's discretion. *Nken v. Holder*, 556 U.S. 418, 433–34, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).  In determining whether a stay is appropriate, courts examine the following four factors: (1) the likelihood of the moving party ultimately prevailing on the merits; (2) the extent the moving party would be irreparably harmed absent the stay; (3) potential for harm to the opposing party if the stay is issued; and (4) whether issuing a stay would be in the public interest. *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986); see also *Guirola–Beeche v. U.S. Dep't of Justice*, 662 F.Supp. 1414, 1417–18 (S.D. Fla. 1987).  If the court decides to grant a stay, the stay must not be "immoderate or of an indefinite duration." *CTI–Container Leasing Corp. v. Uiterwky Corp.*, 685 F.2d 1284, 1288 (11th Cir.1982) (citation and quotation marks omitted).

In considering whether a stay is "immoderate," courts should examine both the scope of (including its potential duration) and the reasons for the stay.  See *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976). As the Supreme Court has explained, "[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 167, 81 L.Ed. 153 (1936).

        **a.**     **It is unlikely that ACA International will result in a reversal of the FCC's rulings.**

The D.C. Circuit will not invalidate the 2015 Order "unless it is 'arbitrary, capricious, an

---

No. 14-cv-1714-JLS-NLS, ECF No. 31 (S.D. Cal. Oct. 30, 2015) (finding a stay no longer warranted, and noting the Court now has the benefit of the FCC's expertise, despite the pending challenges); *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013)(stating that the "FCC has already ruled that a predictive dialer constitutes automatic telephone dialing equipment three times".

abuse of discretion, or otherwise not in accordance with law.'" *Vernal Enters., Inc. v. Fed. Commc'ns Comm'n*, 355 F.3d 650, 658 (D.C. Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)).  Under this exacting standard, the Circuit Court's review "is highly deferential; [it] must presume the validity of the agency's action," and a decision invalidating the FCC's Final Order is appropriate "only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *Id*. (internal alterations and citation omitted).

The interpretation of the TCPA by the FCC is well-reasoned and is appropriate to address the well-founded concerns of Congress as to the threats posed to the public welfare and safety by certain auto-dialing practices.  In no way can it be described as arbitrary, capricious or an abuse of discretion.  In other words, it is more likely than not that the FCC's 2015 Order will be upheld.

Indeed, in the 12 years since the 2003 TCPA Order ruled that the autodialer restrictions apply when using predictive dialers to call a stored list of numbers, Congress has repeatedly ratified the FCC's approach to ATDS.  *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) (When Congress "has not sought to alter [an agency's] interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.").  In 2011, Congress rejected proposed amendments that would have redefined an autodialer as "equipment which uses a random or sequential number generator to produce telephone numbers to be called and to dial such numbers," H.R. 3035, sec. 2(a)(1) (112th Cong. 2011).  Opposed by state attorneys general, see State Att'ys Gen. Letter (JA148-54), and consumer advocates, see Consumer Groups 11/3/11 Letter (JA145-47) the bill failed to make it out of committee.  H.R. 3035 Withdrawal Letter (JA155); see Consumer Groups 12/18/13 Comments 4-5 (JA276-77); Consumer Groups 6/6/14 Ex Parte 4 (JA607).

And in October of 2016—months after the 2015 Order was released—Congress amended the TCPA in Section 301 of the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584, 588, to exempt from the TCPA's prerecorded-call and autodialer restrictions any call made to collect a government-backed debt.  If, as the petitioners in *ACA International urge*, devices that can call any stored list of numbers (not just random or consecutive numbers) fall outside the TCPA's autodialer restrictions, then Congress would have no need to exempt calls seeking to collect government-backed student loans from the autodialer restrictions; debt collectors do not go about calling random or consecutive numbers hoping to stumble upon someone who owes them an overdue debt.  Congress's recent amendments to the TCPA thus confirm that it shares the FCC's decade-old understanding that the TCPA's autodialer restrictions apply to devices used to call a stored list of telephone numbers.

> **b.      Ocwen will not suffer any hardship if the case continues.**

The only harm Ocwen points to is the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice.  This argument has already been rejected by several courts.  See *Coniglio v. Iqual Corporation*, 2015 WL 8521288 at * 1 (M.D. Fla. Dec. 3, 2015) (denying Ocwen's motion to stay case due to ongoing proceedings taking place in the D.C. Circuit); *Rodriguez v. DFS Services, LLC*, 2016 WL 369052 (M.D. Fla. Feb. 1, 2016) (the appeal before the D.C. Circuit does not warrant a stay); *Konopca v. Comcast Corporation*, 2016 WL 1645157 at * 4 (D. N.J. 2016) (the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice is insufficient to constitute the requisite hardship or inequity to support a stay).

> **c.      A lengthy stay may result in lost evidence.**

The delay caused by a stay pending the D.C. Circuit's decision could be substantial.  In

fact, courts have recently rejected this argument on the basis that whatever the outcome, appeal is likely and will further delay proceedings until a final determination is made by the U.S. Supreme Court. *See Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-CV-1109-JST, 2017 WL 167678, at *3 (N.D. Cal. Jan 17, 2017); *Lathrop*, 2016 WL 97511, at *4 ("[T]he D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to Plaintiff."). Thus, as presently considered, a stay pending ACA International would be of indefinite duration, which weighs against issuance of a stay. *Elikman v. Sirius XM Radio, Inc.*, 2015 U.S. Dist. LEXIS 171769 at *6-7 (N.D. Ill. 2015).

A significant delay with unknown limits would cause Jacobs unnecessary prejudice. Memories fade, records are lost or destroyed as time wears on, and employees get fired, are transferred, or quit. If any of these things happen, as is likely with the significant passage of time, Jacobs will be prejudiced. On the other hand, Ocwen would not be prejudiced if the stay is denied because it would experience no harm by engaging in discovery and motion practice. The harm to Jacobs in granting a stay is greater than any harm to Ocwen if the stay were denied.

**d.      The public interest is best served by the uninterrupted enforcement of existing law.**

A lengthy stay of this case and cases like it would effectively give the teleservices and debt collection industries an indefinite reprieve from consumer claims brought under well-established law. Such a reprieve furthers these industries' dual goals of avoiding liability in the short-term whilst working to undermine the scope of the TCPA in the long term. The effect of

this strategy is to thwart the public interest in accessing courts to protect the lawful rights of consumers.  Thankfully, although some courts have ceded to industry pressure, most have found a stay unwarranted, including several courts in this District and Circuit.   E.g., *Mancini v. JPMorgan Chase Bank, N.A.*, 2016 WL 1273185 (S.D. Fla. 2016) (denying motion to grant stay pending ACA International where stay would have been immoderate); *Rodriguez v. DFS Servs., LLC*, No. 8:15-CV-2601-T-30TBM, 2016 WL 369052, at *3 (M.D. Fla. Feb. 1, 2016); *Schwyhart v. AmSher Collection Servs., Inc*., No. 2:15-CV-01175-JEO, 2016 WL 1620096, at *3 (N.D. Ala. Apr. 22, 2016*)* (unwilling to stay case indefinitely pending the issuance of the decision in ACA International); *Nussbaum v. Diversified Consultants, Inc*., 2015 WL 5707147 (D. N.J. 2015) (denying stay pending determination of ACA International based on analysis of four factor test); *Caudill v. Wells Fargo Home Mortgage, Inc*., 2016 WL 3820195 at *3 (E.D. Ky. 2016) (declining to stay case based on balance of the hardships, the potential harm to the public, and judicial economy and efficiency); *Edwards v. Oportun, Inc*., 2016 WL 4203853 at * 6 (N.D. Cal. 2016) (judicial economy is not served by granting a stay); *Richardson v. Verde Energy USA, Inc*., 2016 WL 4478839 at * 2 (E.D. Penn. 2016) (stay not warranted based on evaluation of the three factor test); *Tovar v. Midland Credit Management*, 2011 WL 1431988 at * 4 (S.D. Cal. 2011) (stay not required where issues before the court are not ones of first impression).

## Conclusion

Ocwen seeks an extraordinary remedy based on an appellate review of a federal agency's order entitled to great deference.  Ocwen's goal is to suspend action on as many TCPA cases as possible in the hopes that the D.C. Circuit finds that the FCC acted wrongly by interpreting the TCPA in a manner that served Congress' goal of preserving the TCPA's protections from

changes in automated calling technology.  Ocwen's aims are understandable from an industry perspective, but unjustifiable from a legal and policy point-of-view.  Accordingly, Ocwen's Motion to Stay should be denied and this case should proceed to a full adjudication of the merits of Jacobs's claims.

Respectfully submitted,

George Andrews, Esq.
Florida Bar Number: 15885
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, Florida 33316
Telephone:     (954) 523-4357
Facsimile:      (954) 581-2786
E-Mail: George@fight13.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2017, a true and correct copy of the foregoing was served on all counsel of record or pro se parties identified on the Service List below via e-mail (michael.desimone@lockelord.com; dale.evans@lockelord.com) to: Dale A. Evans, Jr., Esq., Locke Lord, LLP, Dale Evans, Jr., Esq., West Palm Beach, Florida 33401.

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Avenue, 2nd Floor
Fort Lauderdale, Florida  33316
Telephone:  (954) 523-4357
Facsimile: (954) 581-2786

/s/
George N. Andrews, Esq.
Florida Bar No.: 15885
George@fight13.com